The next matter, No. 23-1535 and No. 23-1645, L. M. v. Town of Middleborough, Massachusetts et al. At this time, would counsel for the appellant introduce himself on the record to begin? Good morning. David Cortman for the Plaintiff Appellant. I'd like to reserve three minutes for rebuttal, if I may. You may. May it please the Court. The school defendants here annually celebrate Pride Month and engage in various types of speech in support. They also encourage students to do the same. They hang pride flags, various posters, and they hold specific views that biology alone does not determine sex and that there are an unlimited number of genders. L. M. does not share those views, and in response to the school's view, he wore a T-shirt stating that there are only two genders. His T-shirt did not target any individual. It merely addressed the same subject matter the school had already raised, but a different point of view. And according to defendants themselves, and this is a quote, he was articulate in his position, respectful in his statements about his opinions. But in response, the school immediately gave him a choice between leaving the school for the day or taking off his T-shirt. He chose to keep his T-shirt and left for the day. In this case, the situation should have been a teaching moment. This should have been a moment, as Tinker has said, that we teach the students how to debate on controversial topics of the day. And yet that's what did not happen. Rather than giving it a teaching moment and having a conversation with all the students, they decided to censor him. But what the school cannot do, even though they could share their own views, is decide that only students who agree with those views can speak, but anyone who disagrees should be silenced. And that's exactly what they did here. The school failed to carry its burden to prove that the speech was not protected. Based on the law and the undisputed facts, the district court's decision and the school's reasons. Number one, the passive wearing of LM's T-shirt was not in collision with the rights of others. Whatever the contours of such a right, it cannot be one-sided as here. LM should be given it equally, especially when the school speaks on a different subject. Can I just ask you a question about that, the passive wearing of the T-shirt? Because I keep thinking about the fact that this is a T-shirt, and in your brief, you distinguished between a T-shirt and the brochures that students were handing out and sort of forcing into the hands of others. And I understand that distinction because of the quote-unquote, assaultive behavior or whatever. But what are we to make about the fact that a T-shirt that is worn all day is worn all day, that you have to look at it, you have to read it, you can't take the brochure you were handed and throw it in the trash. It's there. Is that something we should be considering, or how should we be considering that? The way that I would consider it is the courts have said T-shirts are the most passive way to speak. And the reason for that is you're not verbally talking to someone, you're not audibly, you're not in their face, you're not in their space, you're not thrusting a leaflet at them. So courts have said the most passive way to speak is through a T-shirt. I think you can avert your eyes. You may see it the first time, you don't have to look at it. You may only see LM ones throughout the day, you may never see him. But I think as far as how we weigh that, I don't think it changes the analysis on invading the rights of others. Because if you look at all the court cases across the country, including in the circuit, where they found invasion of the rights of others, there's usually some sort of conduct, which is why it matters. For example, the Tinker discussed two cases, Burnside and Blackwell. And they were both about the same freedom buttons, which was a controversial issue back in the day. And one of them in Burnside, wearing the freedom buttons was allowed, even though they had the buttons on all day, same type of issue. But when the speaker was taking the buttons, putting them on other students, accosting them physically, the court said you can't separate the protected speech from the buttons and accosting the students. So my point is that the matter of speech matters, because when you look at invading the rights of others, it's more likely to do so when it's accompanied by some conduct that goes along with it. That may be that's more likely, but what about the Confederate flag cases? Well, I think those are a great example for two reasons. Number one, in every single one of the Confederate flag cases, they didn't just assume because it was a controversial issue about race that they could ban it. They found actual violence in every one of those cases. And what do we do about the record here, which is that by the time of May 5th, there were threatening messages that were coming in. There were some protesting now going outside the school. A police detail had had to be called in, and there was a specific threat anonymously that was in quite stark terms to finding certain people. And we have the affidavit saying that that led to concerns about whether it would be a secure environment for the kids who, LGBTQ kids, who there was also indications or reasons to worry about their mental health. Sure. There's a few answers to that. First answer is all of those things occurred outside the school. So they weren't on school grounds. Well, I don't quite know what that means. They were right outside the school in the sense that to get to the school, you'd have to walk past the protesters. The police detail was at the school, and the threat had been received to school personnel during their time at the school. Yes. And what I was addressing was all the protests that occurred were off-screen. Right at the time. That's right. But they were off-screen. You couldn't get to the school without going past them. Well, that's right. But you wouldn't be able to prohibit that anyway. That's a public sign. But they're not trying to prohibit it. They're trying to figure out whether this particular message, even though for all the reasons you say may not be inherently problematic in any way, is in context something that the school administrator, given the discretion they have to make sure that kids are secure in school, thought in this circumstance, just like the Confederate flag typically isn't something that could be prohibited, in certain contexts becomes such an object of concern that, out of our concern for the discretion of school administrators, they can make that judgment. Yeah. Two other points. There were protests and counter-protests. So all of that evidence that's in the record from the other side, there were both sides complaining. So that can't be attributed to one side or the other. It has nothing to do with being attributed to one side. It's the environment. The idea is, just like with the Confederate flag, if you had some people saying, the South shall rise again, and another side saying, the Civil War, we're glad the Union won, that wouldn't change the general dynamic of the racial climate at the school that would lead an administrator rationally to think, I think for now, no shirts, wearing the Confederate flag. I would agree with Your Honor if the school said, we're going to ban the entire subject matter. And that was my point. But in the Confederate flag cases, they didn't say you couldn't have Union flags? Right. Except for the issue there, there was violence about the particular flag. What Your Honor brought up... This is the concern, is that the school administrators in the testimony was that this shirt had led to these dynamics, and in consequence of that, with other kids saying they were then going to wear this shirt, they wanted to construe their policy to say no as to this shirt. These dynamics were on both sides of the debate, and that's my point. The protests were counter-protest and protest, pro and con. The emails that came in were protest and counter-protest. So my point is, it's not justified to the school to say, look, there's disruption going on on this entire issue, but we're only going to stop one viewpoint. And that's my point to Your Honor. So I don't think... What supports that? I don't know any case law that supports that proposition. When they say that you could stop promoting illegal drugs, they didn't say you also have to stop promoting stopping the use of illegal drugs. No, but here, all that, if Your Honor wants to call it disruption, was based on both sides of the issue. So on those cases, it was one side of the issue that was causing it. Here, all those things that happened were on both sides of the issue. They were protest and counter-protest. The threatening emails was not linked to one side and not the other. My point is, if it's that disruptive, then the best answer is for the school not to wade in that subject matter and then take a side. Just so we can just go analytically. That seems like an argument that even if it was an invasion of rights, it was viewpoint discriminatory and therefore is prohibited for that reason. Well, it's an additional argument, but I will also say it's not... Is that a reason for showing it's not an invasion of rights? I believe it is because I think the invasion of rights has to come from the speaker and something the speaker is doing to the other case. In the Confederate flag cases, the thing that determined that the use of the Confederate flag was problematic was related to the outside activities surrounding what happened, independent of the speaker's flag alone. Well, but I would say that all that, though, was linked to the speaker's speech. And here, there's no link. This court said in Norris that if you're going to have some sort of a violation there... But when you say it was linked to the speaker's speech... In other words, there's got to be proof that the speech from the speaker is causing any of the problems. And what causing there was simply by the way other people were reacting to it, that more kids were going to wear the shirt, that there were all these fights going on, that there was... So here, the testimony is unrebutted from the school administrator that in response to this shirt, other kids were going to wear them, that there were now protests had started in consequence of this, and that threatening messages had come in that led to a police detail, all traced to the wearing of the shirt. Well, it's not all traced to the wearing of the T-shirt, because by that point, there was a board meeting that was held. There were people upset that the shirt was allowed, and people upset that the shirt should have been allowed. And so my point is... But that's all traced back to the shirt. Had that not happened, none of it would have happened. Well, it's also traced back to the fact that the school decided this subject matter was appropriate, let one side of the debate be worn in school, pushed it themselves, and then decided that only the other side wasn't allowed. So it's interesting to say that it invades the rights of the others, even though there's people upset on both sides. Why doesn't the speech from the school invade the rights of the others, the people who disagree, and my clients? And that's my point. Here, you have people on both sides of the issue. So if you want to address it and say, look, this issue is too volatile, that's one thing. But to be able to say, we're going to allow some people's rights to be violated because they disagree with the school's point of view, that's okay. But on the flip side, we're going to prohibit that one viewpoint on the same subject matter. That's not. And when you look at all the case law from Tinker all the way down. But I'm just not following, unless you're saying the Confederate flag cases are wrong. In those cases, other kids were supporting the Confederate flag-wearing side. Right. And yet that was the only side whose speech was being suppressed. Right, because it was the only issue there that was being addressed. Here, the disruption was caused by both sides. These facts are not in any of the other cases. If someone wears a Confederate flag, which, by the way, the violence in those cases was in the school. It wasn't outside the school. It wasn't people just protesting both sides, whether there was case, whether there was the board allowed it or not. Those were all the fights and violence inside the school. But the threatening messages here were sufficiently tied to what might happen in the school that they got a police detail for the school. But it was not for one side or the other. It was for the whole issue. There's no evidence it was on one side of the issue. And I would say it's still, I would say that even if it's true, which it's not in the record, that it was coming from one side of the public, that still would not be a reason to silence one view on that particular subject matter. Because you have to look at what's the student's speech doing to invade the rights of other students. And the fact that the public comes in through emails to the school administration is not a reason to shut down that speech. And I think one of the more important points is, this is the point where, if we remember, you know, we talk about Tinker. Everybody's familiar with Tinker. But we probably remember, some of us, that that was the most controversial issue of the day about the Vietnam War. And the school said, look, we're afraid of disruption here. Because there are students here who've had family members, who've had friends killed in the war. And we're afraid if someone wears a black armband to protest the war, then there's going to be competing sides. There's going to be standoffs. There's going to be the same debate that we're having here. But here we had the additional information about the concern about suicide risk. Two children, who would be the children who would be recipients of this message that were most concerned, would respond that way. There was no such evidence in Tinker. Yeah. And first of all, I want to say, that should never be diminished. And I don't want to be dismissive of it. Because that's very serious, regardless of who it's happening to. It should always be addressed. I would answer it the way the court in the Seventh Circuit did in Zamenhek. Not only did they have the same argument in Zamenhek, they had an expert report saying all the things Your Honor just said, and that's in this case. And the court there basically said, there has to be a tie that this specific t-shirt is going to matter at all, or affect the same thing in Norris. It's going to affect those type of outcomes. Not a general concern for people. In that case, there had been none of the surrounding threats and controversies following the shirt that there were here, correct? No, there had been previous incidents. It said following. Right, but the problem is, is that there was nothing following, there was no link here. My understanding of case law, including this circuit, is there has to be a link between whatever harm you're alleging, and the specific speech in question. There can't be a general, well we have a general issue with this, and then you silence speech, which whatever you think is going to apply. So if there was a tie, and said. What do you count as a tie? That would be helpful. I would just say what the courts have said. And that is, if you can say that the wearing of this particular t-shirt caused this student to want to harm himself or do something, then I would say in that instance, you could do something about it. You can't make a predictive judgment? No, because the problem is you can't tie it in general when there's an issue this broad, and there's studies from all different parts of the country. Because I thought our case law was fairly clear that you can make predictive judgments. I think there has to be actual and concrete facts that this particular shirt is going to cause that. And what's interesting here, when you look at all of these types of issues, it's important that the school... There was data, the administration had data about the children who were LGBT in the school, as well as the trans kids. And they had data about their mental health, as well as data about the general mental health of children in that category, and the harassment that they have sustained. Well, I would say... Why couldn't the administration, with that information in mind, take that into consideration? Well, you can take it into consideration, Your Honor, but the problem is how broad does that go? And the Zamanet case not only had those specific instances, they had an expert report, and the court still said that's not enough because there's got to be... In order to violate the First Amendment in silent speech, the school has the burden to prove the speech is protected. So they have the burden to show that that speech is what's going to harm those kids. And those issues, as serious as they are, and they are, they're very complex. There's very rarely one particular thing. There's a very complex issue going. So to say that someone says something you disagree with, when you already have given the other side... And that may be... Let's take it this way. Suppose it had been a much more... Which it wasn't, I understand. A much more derogatory and aggressive message on the shirt. As I read your materials, I don't hear you saying that the school would be powerless to restrict that shirt. They would not be, as long as it crossed whatever threshold that the courts have set. So in other words, derogatory demeaning, if you look at... And I won't go through each one of them, but if you look at the Zamanet case, the Sachs case, the Hadley case here in Massachusetts, and the Parents Defending Education case. Every single one of those cases had different words. Derogatory, demeaning, negative. And the court said, you can't allow one side of it positive messages, and then not allow negative messages or derogatory demeaning. Now, if it rises to the level, as it may, depending on the different cases, because there are some... If it rises to the level of fighting words, in other words, you're going above and beyond, that could be prohibited. If you're going above, just... But if it's just normal, if it's protected speech, just because someone's offended by it or angered by it, the court said, that's not enough. Suppose the T-shirt said, all trans kids are retarded. Does that cross the line? Or is that just viewpoint? No, I... If your client said, I truly believe that. Yeah. Can that not be banned? I think the way I read the cases, I would say that that could be banned as fighting words. And the reason... Okay, so then the question is, if that's true, and I take it that's... I think it's consistent with how you've argued the case. Right. What I take from the case, the Confederate flag case and the Hicks and then the Redneck is that once... that that's consistent with that, but not all messages that are derogatory, characterized derogatory, fit into that box. But in particular circumstances, things can develop within a school community where an otherwise unobjectionable message becomes sufficiently objectionable that it can invade the rights of others. And I just am asking you here, I take the point about the don't be gay, be happy. There was not there the follow-on developments that occurred here. And even if your position is right as to what happened as to May 2nd, as of May 5th, the world was different. And that's the relevant record for the injunction. Yeah. So the question is why at the time what they know was May 5th, which isn't just the concerns about the mental health of LBGTQ kids at the school, which was documented. It's not just the complaints that were made about the shirt the first time. It's all that's happened the second time, which has now become a very volatile environment in which those kids that they're worried about are going to have to walk through school in which their identity is being publicly debated, in which threatening messages are coming in. Why in that circumstance isn't it safe to say, well, as a matter of discretion, we think this message now is the kind of thing that you're conceding would be a problematic message? So it brings me, it makes me think of the heckler's veto response. So what I would say is, and the Supreme Court has said this in many cases, but if there's an issue on the public standing off of school grounds, for example, and they're interfering with kids or they're affecting kids' entrances or they're doing things, then the police should deal with those people. What I'm saying is is that when there's protests on both sides of the issue and the only way it came into the school was through email messages, that's not sufficient because it's not dealing with the student, either one of the students on both sides of the issue. What's the police supposed to do? They're allowed to protest. They are, but then that right to protest shouldn't filter into the school and say, now we're going to silence one side of the debate. But this is what I think the point about Tinker is in the way it's been construed. It's a school. The idea is that people are supposed to be able to be secure in learning in the school. Well, then you make it secure if the people outside, my understanding from Your Honor's question, the people outside are making them insecure. So you deal with that problem. You don't silence the speech. How do you deal with it as a school administrator? If they're making them insecure, the police should be out there dealing with those protests. What should they do to them? If they're doing anything illegal, they should move them out. They're not. They're protesting. But then that shouldn't be used as an answer to say we can silence a particular student's speech inside the school. Why, if the reality is that that's now making the school experience uncountable for students? Because the protesters are on both sides of the debate and they're not silencing both sides of the debate. And I know it's a viewpoint claim but it fits within Tinker. If you're going to allow outside people to then become inside when the factor should be what's the student's speech inside the school and what are the students' reaction inside the school and your answer is well, there's a problem outside the school, I think that's wrong legally on its face. But even if you go there, the answer is not shut down one side of the debate and allow the other. The answer is this issue is too volatile which, by the way, the school brought up in the first place. And if this was only an innocuous response to it, and I think the teacher and the innocuous message it wasn't hateful, it wasn't like all those other cases, it matters a lot because the way you receive it has to be reasonable. And I would just basically end by saying I know my time is up is that outside protest on both sides of the issue shouldn't be allowed to be brought into the school and if it is, then both sides of the debate should be shut down and monitored not just one side. If there are no more questions, I'll wait for the rest of my time for rebuttal. Thank you. Thank you, Counsel, at this time. Counsel for the appellees would please introduce herself on the record to begin. Deborah Ecker for the appellees. May it please the Court. Characterizing the statement that there are only two genders as it being merely offensive trivializes the significant harm that could occur      that are in the record that were noted by the school and the school and the school and the school and the school and the school and the school and the school COVID-19 should be known to the school officials as to that harm and the effect that it has on those students abolition to learn in the school. Plaintiff has repeatedly argued that he was protesting against the school speech but that's a false equivalency because that is government speech and the school may and they should promote a message of inclusivity equality and respect in schools that is consistent with the federal law. There are times when some of the school speech and the official's decision may come into conflict or tension with the first amendment but here based on this record looking at what the school officials knew about their schools the age of the kids the LGBTQ community in that school and the real mental health concerns their decision to have plaintiff remove the t-shirt was reasonable they reasonably could forecast that the message if he was allowed to wear it in the school and in a classroom would reasonably cause a disruption to the school work and invade the rights of other students. The court below decided to limit her decision to the invasion of the rights of others while the Harker case is a seminal case in this issue and I know it was vacated there have been a number of cases that have been decided since that look to see whether the attack the verbal assault is based on a core identifying characteristic of the student in making a determination in the context of their schools that the message that is being warned would invade the right of the other students their ability not only to be secure but to prevent their psychological harm and to focus on school work. Some of the factors that are taken into account for the substantial disruption and the invasion of rights overlap one another whether there is evidence or there is thought that the grades will go down or the school or the student will not come to school. But again the information before these school officials that they had about their students who are in middle school was that being forced to sit in a classroom with this message they believed would cause significant harm to these kids. Everything you are saying seems focused on what was the case as of May 2nd. But as of May 5th the world was somewhat different and more volatile in the school. How is that relevant? Well it is relevant because at the time the decision was made. And so by the time there is a lawsuit that is filed or even by the time he comes to school on May 5th he is wearing the second T-shirt. There is obviously tension outside of the school but the kids certainly see that when they come in. It is not as if let's say they had allowed Plano to wear the T-shirt and no one said anything and there was no commotion and didn't go to the school committee. This was well-known. Kids passed by on the way into the entrance. They see all these protesters. They know about the concerns. There is one woman at the school committee who talked about the fear that she had for her student now coming to school with not only counter protesters but also knowing that other students might wear this T-shirt. So it was a factor. It is certainly a factor when you have to add additional police officers into the school. It affects the environment of the school making people perhaps feel more safe or less safe. They should be concerned about what others will say about them. And not only for those who are so-called out in the community as non-binary but those who are not. The impetus is not on that student to come forward. It does affect what occurred in the school certainly on May 5th and certainly at the argument below. For purposes of the injunctive order that we're looking at, what is the relevant time period or frame that we should be focused on for assessing whether the continued enforcement of the policy with respect to this message is justified? Well, I would say certainly at the beginning, right, and going forward, there are still school officials and I have no information to believe that the composition of the student body has changed within that school other than some have gone on and graduated imagining that there are still students who are non-binary or who support them, those who are out and those who are not. So I believe that it's from now and then going forward, unless there's information, and I don't know how this would be, that there's no student that would be gender nonconforming or would be struggling with that type of message. But this very message How much longer is this plaintiff in this school? I believe he was in 7th, so maybe this year. I'm not certain of that, Your Honor. I was trying to recall if he was in 6th or 7th grade at the time this happened. It was the last school year, so at least during this school year. So the message itself, though, without knowing who's in that classroom Here's a puzzlement I have from reading the case law. There's a certain set of, the courts are obviously struggling with this. On the one hand, we don't want to write school speech codes, and we shouldn't be doing that. On the other hand, there's certain messages that it is not as vile as the ones that there seem to be relatively large comfort with, that Tinker didn't contemplate those being permissible. And then courts have to figure out what to do with those messages. And many of those cases seem to handle it by looking at the actual factual circumstances in the particular school at the time with respect to those messages. That is correct, Your Honor. They look at it at the time. But what does that mean? I mean, does that mean then that kind of authority to regulate the message then expires at some point? So then three years from now, we start it again, and we are supposed to think about this idea that sometimes it's very fact-specific and sometimes it's just a sense that, well, that's over the line. Well, I don't think it's a blip in time, and I think perhaps the proper paradigm is to look at the severe or harassing or pervasive type of message. I mean, the courts have before it, obviously, the specific facts for each specific case. But going forward, is this type of message the type that should be prohibited in school from now until time? So is the message that it's not vile? I'm sorry? Are you suggesting that it's not vile? Chief Judge Barron said not so vile. Are you suggesting that this is a not so vile message? I'm not suggesting this about this message at all. I think that this message, that there are only two genders, is vile, and it  someone who is non-binary that you do not exist, that your validity does not exist, and it attacks the very core characteristic. But the very core characteristic is that there are only two races. So that no matter what, some races      That, to me, would be a vile message. Chief Judge Barron said that there are only two races, and it attacks the very core characteristic of Christianity. Christianity is the only true religion. Can you not wear that shirt? That depends on the context. Why? I think, well, because it depends if it would offend or invade the rights of those students. But this puts the courts in a funny position where I don't know. I mean, how do we just make our own judgment? You would think school administrators are the ones to make those judgments. So then we could have a rule, total deference, with respect to all messages, but we can't have that rule. So that's why I guess I'm at least struggling. It's not that this thing isn't vile or is vile. It's sort of who's supposed to decide how vile it is? And when we're reviewing a judgment that it is, what am I supposed to be using as my metric for assessing it? One would be, and you've said this, the school officials and what they knew, the age, the fact, and what they knew about their school. And then going forward, look at, you know, the studies that are out there, that are on the record about how this type of message would affect a middle school student or other students who are captive audience that are sitting in this classroom and looking at it and perhaps are struggling about their own identity or they don't want to come out or are fearful of that. So I think that's the metrics, at least in this particular issue with this particular message. The courts have struggled and they have looked at, you know, different factors. In the Nuxville case that was decided, they allowed the T-shirt because they really did want to look at how the word gay was used within the high school setting. Again, that's high school. But they do have to look at the specific facts depending upon what's before them. I can't give you a clear cut rule one way or the other. Only that those teachers and the administrators on the ground are the best to make that determination depending upon what their knowledge and what they know about the students who are with them. Do you want to just address the viewpoint issue? So viewpoint, again, I think I said at the beginning, the school may, that's government speech, different than the student speaking. There's no information, no evidence in the record that other students were allowed to speak that were disruptive or that the school by holding pride day or pride week or supporting inclusion was requiring that plaintiff adopt that view. So it's a false comparison. I get that, but I think putting that aside, whether the school was making these messages, I don't know. If you want to ban this message because of the consequences of it, et cetera, then why don't you have to ban all messages on the topic? What's the reason for that? Because one supports the educational mission. It is an inclusive educational environment, and I think most of the cases and the statutes require the burden is on the school administrators to make sure that you have that inclusive environment. So in this case, and I'll go back to this case, could the school administrators all right, let's say one teacher will let them wear one, let's say there are two kids, three kids, when could they have pulled the T-shirts off? If the student later on had said, well, you knew or should have known that my educational environment was harassing because you allowed these T-shirts to be worn. The schools can promote one, an inclusive viewpoint. The students can wear pride shirts. They're adopting the school's message, but that doesn't invade the right of other students based on their characteristic, their core identity, versus what the plaintiff's T-shirt did to students that we were aware of in the school. I'm just trying to, there's a certain abstractness to these questions I recognize, but if you have a shirt that says male is not a gender, is that permissible or impermissible? Male is not a gender? I guess it is abstract. I don't even know in some ways what it means. And so I guess the school administrators would have to think, well, is that something that's attacking the core identity? Probably not. Male is not a gender. But that would be there at their discretion to determine what in that message would invade anyone's rights, binary, non-binary students. So it's our position obviously that the lower court's judgment should be affirmed that the school reasonably in their discretion made the decision to pull the t-shirt, and again, the second t-shirt as well, because they reasonably believed that it would cause disruption in the school and also would invade the rights of others. Is that before us, the disruption? I mean, given the record we have, could we affirm on that basis? I believe based on the record you have, you can affirm on that basis. There's unrefuted evidence based on the school  to pull a similar type t-shirt to school. It's obviously in your honor's discretion to remand the court to have the lower court decide that in the first instance so that you have a complete ruling before you. On the record here, what are your best factual arguments that there was substantial disruption? It's a reasonable forecast of disruption, but the way this happened is he comes into school, teacher calls the principal office, says complaints about the t-shirt, they go and they take it back, that's the initial. I know the fact. Just bullet point me the substantial disruption. What do you rely on to establish that? One, that there was this call, right? One. Two, that they could reasonably forecast it because of what they knew about the student population and reduction in grades, maybe they don't come to school, that's all considered as well. Reasonable disruption when evaluating the factors, age group, and again, what the superintendent, the principal knew about this population. You have the negative impact on mental health and education of LGBTQ students, you have a complaint. Correct. Okay. Yeah, but then it's reasonably forecast, right? And reasonably forecast. So you don't have to wait until there's actually a brawl or some disruption to the school. I thought in the affidavit from the, is it principal Tucker? Principal Tucker. Her affidavit, what she says as of May 5th, she points to the threatening messages that are coming in, the protests that's going outside, the police deal having to be called in. That is correct. I thought before, for the first T-shirt, I didn't know if Your Honor was asking. Why, for the purpose of the injunctive relief, why would we have to stop there? You're correct, Your Honor. You don't have to stop there. You are correct. If you have nothing further, Your Honor, I would rest on our brief. Judge Thompson, did you have anything else? I'm good. Thank you. Thank you, Your Honor. Thank you, counsel. At this time, counsel for the   I would like to close up the time frame because I think that matters to the equation and to Your Honor's question. The first denial was before May when all that happened. So the first denial from his T-shirt was based solely on the T-shirt. No outside disruption, none of those things. I want to separate the two because if the second one matters, we still have to look at the first. Why do we have to look at the first? Because what we're looking for is permanent injunctive relief as to the particular T-shirt. I think we can separate the two if the court wants to. Why? For two reasons. Because on the first one, the question is if the school can show all this disruption is there, in that instance, they can prohibit disruption. Why would we do it that way when we're talking about injunctive relief at this school with respect to this school? Because I don't think we could do it in perpetuity to say if a T-shirt is worn on the other side of the view, it's always  result in that. I don't think it's our requirement. I think it's the school's to do so. Let me separate the injunctive relief  school. You're saying that you want an injunction only so long as your client is at the school and that at the point that he departs the injunction can dissolve. I would say a few things. The high school policy and this is not in the record, but I'll represent it to the school. I would say it's still needed now because he's still in eighth grade and he's still subject to this and we have asked for him to wear the T-shirt immediately. How much longer is he in the school for? Whenever a school ends. He's in eighth grade now, right? Yes, but then he goes on to the high school. So we've got three months left in the school. Is there some reason to think in the next three months that the conditions are going to be very different? I don't know if there's any reason. It only happened for a couple of weeks. The protests were only there for a day. It hasn't happened since. The issue is still there. It's still fresh. It's still in the media. And I guess the answer would be, factually speaking, has not continued to happen. So I would say it was very uncertain. But the issue is still out there. The media tension came after the board meeting. So this wasn't a result of his shirt. This was weeks and weeks later. So when all this disruption happened, it was right after the board meeting. This was my original point. It's not even tied to the shirt. It's tied to the shirt.    legal question is, what is the burden? Can they rely on that for a short period of time? I would say legally speaking, no. Because I think it's outside campus and shouldn't  there. If it's a legal mistake, I think it only has to apply to the amount of time expected. It hasn't happened since. It's still in the media. Everybody is still aware of it. I don't think that matters. But we still have to go back to the first violation. Not in this appeal. This appeal I thought was only from the denial of injunctive relief. It's not. It's both the denial of injunctive relief and the permanent ruling. There's no damages claim before us. Not on appeal. There's a domino damage claim. My point is it's automatic. It doesn't need to reach the damage claim. It's already there. My point is the court below the court is not limited to injunctive relief. It was not limited to injunctive relief. It wasn't limited to injunctive relief. The damages claim comes along automatically with the constitutional violation. If there was a constitutional violation, the damage is already there. She ruled as a matter of law that there was a final judgment awarded to the defendants. What was the final judgment about? The request for injunctive relief only, correct? Yes, but the court didn't limit it to that. That's all my point. I don't know what that means when you say it. Regardless of how we splice it, I just want to separate the two incidents. The first incident still a constitutional violation. All they had was the shirt. The second incident with the disruption of the shirt. I granted the court wants to look at it separately. I want to talk about a couple other things if I may. Is there anything pending? No. The case is closed. There's nothing open. The case has been closed. What does  notice of appeal refer to? Just the injunctive ruling? The whole ruling itself. There were two different appeals consolidated. I think what happens is when you have a temporary injunction and it's merged with a permanent injunction, the temporary injunction goes away. Did the notice of appeal reference anything besides the injunctive order? It's the only order in the case. It appeals that order. There's an order and a final judgment. The final judgment would apply to the complaint which included more than the injunctive order. It's the final judgment on the entire thing. It's the final judgment. All of that, yes. But the damages, the motion to dismiss, there was never a motion to dismiss. How can she dismiss the complaint? Because the parties agreed there was no more Berry    no other case where the party had decided that the ruling could be converted. The case, Uzbunim versus Pruskisi, where nominal damages comes automatically along with what they knew going forward. If there was a constitutional violation, once that's completed, regardless of what happens in the future, there's still nominal damages. I understand what you're saying. That's exactly right. And just to touch on a couple of things, the policy about safety, it's interesting that the school district's policy requires and promises safety for all students. That's our point here. Even if you look at the affidavits referenced by the school district, it should be considered along with everybody else's. Because there are protected classes, it doesn't affect the  amendment. There was one reference in the affidavit that said they were concerned for both our clients and the other students' safety. My point is that the safety of the students and how they're being offended and their responses to things  taken across the board. The fact that there are protected classes matters to actual bullying and harassing severe, pervasive, targeted. But when you're in protected speech, there's no less First Amendment right to L.M. because he's not in a protected class versus those students who are. And all my point is the promise for inclusivity should count across the board for students, whether it's L.M. or anyone else, not just to be uncertain students. And I think that that's a pretty important point. I think that's a very important point.  believe that that is a crucial point. I don't want to be here talking about policies and how to address that. I   be here    and how to  that. I don't want to be here talking about policies and how to address that. I don't want to be here talking about policies    that.    be here talking about policy and how to address that. I would be here talking about that. I would      and how to address that. I would be here talking about policy and how to address that. I would be    policy and how to address that.